UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



UNDERSEA BREATHING SYSTEMS, INC., )
                                  )
    Plaintiff and Counterclaim Defendant, )
                                  )
v.                                )    Case No. 6:04-CV-57-ORL-22DAB
                                  )
NU VENTURE DIVING CO. d/b/a       )    **INJUNCTIVE RELIEF SOUGHT**
"NUVAIR," a corporation,          )    **JURY TRIAL DEMANDED**
                                  )
    Defendant and Counterclaim Plaintiff )
_____/

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Nu Venture Diving Company ("NuVair") answers the complaint of Undersea

Breathing Systems, Inc. ("UBS"), entitled "Action for Patent Infringement, Trademark

Infringement, False Advertising and Unfair Competition, Injunctive Relief and Jury Trial

Sought," (hereinafter, the "Complaint") as follows, the numbered paragraphs below

corresponding to the comparably numbered paragraphs of this Complaint:

### ANSWER

1.      NuVair is without knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 1 of the Complaint, and therefore denies the

same.

2.      Admitted.

3.      Admitted.

4.     Admitted that NuVair has sold, and offered for sale, nitrox-generating apparatus in interstate commerce in several states and has offered such equipment within this judicial district.  The allegations of Paragraph 4 of the Complaint are otherwise denied.

5.     Paragraph 5 contains conclusions of law to which no answer is required. The allegations of that paragraph are denied to the extent they may be construed as an averment concerning any conduct of NuVair or the sufficiency of any claim asserted by UBS.

6.     Admitted for jurisdictional purposes only.  The allegations of Paragraph 6 of the Complaint are otherwise denied.

7.     Paragraph 7 contains conclusions of law to which no answer is required. The allegations of that paragraph are denied to the extent they may be construed as an averment concerning any conduct of NuVair or the sufficiency of any claim asserted by UBS.

8.     Admitted for jurisdictional purposes only.  The allegations of Paragraph 8 of the Complaint are otherwise denied.

9.     Paragraph 9 contains conclusions of law to which no answer is required. The allegations of that paragraph are denied to the extent they may be construed to make averment concerning any conduct of NuVair or the sufficiency of any claim asserted by UBS.

10.     Paragraph 10 contains conclusions of law to which no answer is required. The allegations of that paragraph are denied to the extent they may be construed as an

2

averment concerning any conduct of NuVair or the sufficiency of any claim asserted by UBS.

11.     Admitted for jurisdictional purposes only. The allegations of Paragraph 11 of the Complaint are otherwise denied.

12.     Admitted for venue purposes only. The allegations of Paragraph 12 of the Complaint are otherwise denied.

13.     NuVair is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of the Complaint, and therefore denies the same..

14.     NuVair admits that the Patent Office issued United States Letters Patent 5,611,845 (the "'845 patent"), 5,846,291 (the "'291 patent"), 5,858,064 (the "'064 patent") and 5,85,877 (the "'877 patent"; and, collectively with the '845 patent, the '291 patent and the '064 patent, the "Patents in Suit") on the dates alleged. The allegations of Paragraph 14 of the Complaint are otherwise denied.

15.     Admitted that line [73] on the face of the alleged patent instrument attached to the Complaint bears the name "Undersea Breathing Systems, Inc." However, NuVair is without knowledge or information sufficient to form any belief as to whether UBS was in fact either the assignee or owner of any legal or equitable title in or to the patent at any time relevant to the allegations set forth in the Complaint or whether UBS has standing to sue thereupon, and therefore, the allegations of Paragraph 15 of the Complaint are otherwise denied.

16.     Admitted that line [73] on the face of the alleged patent instrument attached to the Complaint bears the name "Undersea Breathing Systems, Inc." However, NuVair is without knowledge or information sufficient to form any belief as to whether UBS was in fact either the assignee or owner of any legal or equitable title in or to the patent at any time relevant to the allegations set forth in the Complaint or whether UBS has standing to sue thereupon, and therefore, the allegations of Paragraph 16 of the Complaint are otherwise denied.

17.     Admitted that line [73] on the face of the alleged patent instrument attached to the Complaint bears the name "Undersea Breathing Systems, Inc." However, NuVair is without knowledge or information sufficient to form any belief as to whether UBS was in fact either the assignee or owner of any legal or equitable title in or to the patent at any time relevant to the allegations set forth in the Complaint or whether UBS has standing to sue thereupon, and therefore, the allegations of Paragraph 17 of the Complaint are otherwise denied.

18.     Admitted that line [73] on the face of the alleged patent instrument attached to the Complaint bears the name "Undersea Breathing Systems, Inc." However, NuVair is without knowledge or information sufficient to form any belief as to whether UBS was in fact either the assignee or owner of any legal or equitable title in or to the patent at any time relevant to the allegations set forth in the Complaint or whether UBS has standing to sue thereupon, and therefore, the allegations of Paragraph 18 of the Complaint are otherwise denied.

19.     NuVair is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Complaint, and therefore denies the same..

20.     Denied.

21.     Admitted that a prior agreement between UBS and NuVair, dated July 29, 2000, was amended by written agreement on April 7, 2001. The terms of the Agreements speak for themselves. The allegations of Paragraph 21 of the Complaint are otherwise denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     NuVair admits that this allegation purports to state a claim for damages and injunctive relief for infringement of the '845 patent, but denies all remaining allegations.

26.     NuVair restates and incorporates by reference paragraphs 1-6, 13-19, and 21-24 from above.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     NuVair admits that this allegation purports to state a claim for damages and injunctive relief for infringement of the '291 patent, but denies all remaining allegations.

32.     NuVair restates and incorporates by reference paragraphs 1-6, 13-19, and 21-24 from above.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     NuVair admits that this allegation purports to state a claim for damages and injunctive relief for infringement of the '064 patent, but denies all remaining allegations.

38.     NuVair restates and incorporates by reference paragraphs 1-6, 13-19, and 21-24 from above.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     NuVair admits that this allegation purports to state a claim for damages and injunctive relief for alleged infringement of the '877 patent, but denies all remaining allegations.

44.     NuVair restates and incorporates by reference paragraphs 1-6, 13-19, and 21-24 from above.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     NuVair admits that this allegation purports to state a claim for alleged infringement of the trademark EXPLORER, but denies all remaining allegations.

50.     NuVair here restates and incorporates by reference the allegations of paragraphs 1-4, 7-12, and 19-24 above.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     NuVair admits that this allegation purports to state a claim for alleged infringement of the trademark TECH, but denies all remaining allegations.

56.     NuVair here restates and incorporates by reference the allegations of paragraphs 1-4, 7-12, and 19-24 above.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     NuVair admits that this allegation purports to state a claim for alleged infringement of the trademark TECH MASTER, but denies all remaining allegations.

62.     NuVair here restates and incorporates by reference the allegations of paragraphs 1-4, 7-12, and 19-24 above.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     NuVair admits that this allegation purports to state a claim for alleged infringement of the trademark SILENT TECH, but denies all remaining allegations

68.     NuVair here restates and incorporates by reference the allegations of paragraphs 1-4, 7-12, and 19-24 above.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Denied.

73.     NuVair admits that the allegations of the corresponding section of the Complaint purport to state a claim for false advertising under 15 U.S.C. § 1125(a). The allegations of Paragraph 73 are otherwise denied..

74.     NuVair here restates and incorporates by reference the allegations of paragraphs 1-4, 7-12, and 19-24 above.

75.     Admitted.

76. Admitted that a copy of NuVair's web site was reproduced as Exhibit I to UBS's Complaint, which text speaks for itself. The allegations of Paragraph 76 of the Complaint are otherwise denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. NuVair admits that the allegations of the corresponding section of the Complaint purport to state a claim for unfair competition under Florida law; denied as to any remaining factual allegations.

82. Denied.

83. Denied.

84. Denied.

To the extent any remaining allegations of the complaint are not expressly admitted above, they are hereby denied

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

85. Plaintiff's claims are barred for Noninfringement, because NuVair has not infringed a claim of any of the Patents in Suit.

### SECOND AFFIRMATIVE DEFENSE

86. Plaintiff's claims are barred for Invalidity because the asserted claims do not satisfy the grounds required for patentability under the Patent Act, Title 35, United

States Code, including without limitation, failure to satisfy the requirements of 35 U.S.C. §§ 102, 103 and 112, among others, and the specific grounds of invalidity and noninfringement, which are not presently fully known to NuVair, but will be disclosed by amendment or otherwise when more fully known, in accordance with 35 U.S.C. § 282, include, on information and belief, that following, inter alia:

    a.    The inventions as set forth in the claims of '291, '845, '064, and '877 patents were known and used by others in this country before the invention thereof by William H. Delp, II ("Delp"), the person named as inventor on the patent, and said invention was both described in a printed publication in this country and in public use and on sale in this country more than one year prior to the date of the application upon which the '291, '845, '064, and '877 patents are based.

    b.    Delp, the inventor listed on the '291, '845, '064, and '877 patents did not himself invent the subject matter sought to be patented therein.

    c.    Before the applicant's alleged invention of the subject matter claimed in the '291, '845, '064, and '877 patents, the inventions were made in this country by another person or persons who had not abandoned, suppressed, or concealed that invention.

    d.    The differences between the subject matter of the claims of the patent in suit and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains, and the claims of the '291, '845, '064, and '877 patents are unpatentable under 35 U.S.C. § 103.

e.     UBS has failed to include in the patent in suit a written description of the invention sufficient to enable a person skilled in the art to which it pertains to make and use the claimed invention, and has failed to disclose the best mode contemplated by the inventor of carrying out his invention, in violation of 35 U.S.C. § 112.

f.     The claims forming a part of the patent in suit are indefinite and fail to particularly point out and distinctly claim the subject matter of the invention, in violation of 35 U.S.C. § 112.

### THIRD AFFIRMATIVE DEFENSE

87.     UBS claims are barred for Fraud upon the United States Patent and Trademark Office and for Patent Misuse, because UBS has so abused the process of procuring a patent and misused the Patents in Suit after obtaining issuance, as to render each claim of each patent unenforceable and to render this case exceptional within the meaning of 35 U.S.C. § 285, through a course of action including, without limitation:

a.     intentionally withholding from the United States Patent and Trademark Office during the examination of the application leading to the '291, '845, '064, and '877 patents non-cumulative and material prior art and other information known to UBS regarding apparatus in public use more than one year prior to the filing date of said application, which apparatus was material to the examination of said patent application;

b.     bringing this and prior civil actions without performing the required pre-trial investigation, which would have demonstrated the absence of infringement of the '291 patent and of a parent patent to the '291 patent;

c.      misusing the patent by intentionally mismarking products in violation of

35 U.S.C. § 292;

d.      misusing the patent in connection with and to bolster a scheme of tortious

conduct, to effectively extend, ad terrorem, the patent monopoly beyond the scope of

allowed and enforceable claims by repeatedly misrepresenting both the scope, validity

and enforceability of patent coverage; and

e.      misusing the patent in connection with and to bolster a scheme of tortious

and criminal conduct, including identity theft.

## FOURTH AFFIRMATIVE DEFENSE

88.     UBS claims are barred because the patent is invalid and unenforceable for

deceptive and willful misjoinder of inventors.

## FIFTH AFFIRMATIVE DEFENSE

89.     UBS claims are barred under the doctrine of Implied License.

## SIXTH AFFIRMATIVE DEFENSE

90.     UBS claims are barred under the doctrine of Patent Exhaustion.

## SEVENTH AFFIRMATIVE DEFENSE

91.     UBS claims are barred under the doctrines of License and Consent.

## EIGHTH AFFIRMATIVE DEFENSE

92.     UBS claims are barred and all damages set-off under the contract remedy

of cover.

## NINTH AFFIRMATIVE DEFENSE

93.     UBS claims are barred under the doctrine of prosecution history laches.

## TENTH AFFIRMATIVE DEFENSE

94.     UBS claims, including without limitation any claims for costs, are barred

for the intentional or deceptive assertion of a patent containing an invalid claim.

## ELEVENTH AFFIRMATIVE DEFENSE

95.     UBS claims are barred under the doctrine of Laches.

## TWELVTH AFFIRMATIVE DEFENSE

96.     UBS claims are barred under the doctrine of Waiver.

## THIRTEENTH AFFIRMATIVE DEFENSE

97.     UBS claims are barred under the doctrine of Acquiescence.

## FOURTEENTH AFFIRMATIVE DEFENSE

98.     UBS claims for damages, costs and fees are barred by set-off because

UBS is obligated to indemnify NuVair.

## FIFTEENTH AFFIRMATIVE DEFENSE

99.     UBS claims are barred under the doctrine of Unclean Hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

100.    UBS claims are barred by the doctrine of equitable estoppel.

## SEVENTHEENTH AFFIRMATIVE DEFENSE

101.    UBS Lanham Act claims are barred because UBS lacks standing to assert

them.

## EIGHTEENTH AFFIRMATIVE DEFENSE

102.    UBS claims are barred for failure to state a claim upon which relief can be

granted.

## NUVAIR COUNTERCLAIM AGAINST UBS FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

NuVair counterclaims against UBS and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.    UBS is a Nevada corporation having its principal offices in the State of Florida.

2.    NuVair is a corporation of the State of California having its principal place of business in Oxnard, California.

3.    This Court has jurisdiction of these counterclaims pursuant to 28 U.S.C. §§ 1338, and 2201, in that the counterclaim for declaratory relief asserts a substantial federal claim for a patent controversy under the Patent Statutes, 35 United States Code, and pursuant to the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367, in that the counterclaim relates to the same case or controversy and is joined with and in response to UBS's Complaint.

4.    Venue is proper in the Middle District of Florida pursuant 28 U.S.C. § 1391(b) where, upon information and belief, UBS/CounterNuVair UBS does business, and where UBS/CounterNuVair UBS has brought this civil action, asserting among other things, infringement of United States Letters Patent 5,611,845 (the "'845 patent"), 5,846,291 (the "'291 patent"), 5,858,064 (the "'064 patent") and 5,85,877 (the "'877 patent"; and, collectively with the '845 patent, the '291 patent and the '064 patent, the "Patents in Suit").

## DIVING AND DIVER BREATHING GAS

5.     When a diver is submerged under water, pressure is exerted against the body, which increases as the diver goes deeper into the water.

6.     As pressure increases with depth, the driver's circulatory system is also compressed, causing increased absorption of nitrogen in the diver's blood.    If a diver surfaces too quickly, the rapid decompression can cause significant sickness, popularly known as the bends, caused by too-sudden release from the blood of the excess dissolved nitrogen, which can cause severe pain, temporary paralysis, permanent damage or death.

7.     Diver breathing gases are composed of various gases that are found in various quantities in the atmosphere, principally, oxygen and nitrogen.

8.     The proportion of Diver breathing gases used with undersea breathing systems are sometimes varied from ambient air to reduce "decompression obligation," the necessity to stop periodically to allow a body to adjust to changes in pressure to avoid the ill-effects of the bends.

9.     Enhanced oxygen breathing gases, or gasses in which oxygen comprises a greater percentage than is found in ambient air, popularly known as "nitrox," are attractive to divers for use with undersea breathing systems, in part, because they both provide greater amounts of oxygen and reduce such decompression obligations.

10.     Accordingly, it has been found of interest to safely and efficiently generate Nitrox for use with undersea breathing systems.

## HISTORY OF NITROX GAS GENERATION

11.     Nitrox gas was developed decades ago and publicly used prior to August 1994, for use in connection with medical applications.

12.     Nitrox was publicly used for recreational diving on or about the 1960s, and prior to August 1994, because it permitted a diver to experience longer "bottom" or underwater times with greater safety.

13.     Permeable membrane filters receiving ambient air at an intake, and exhausting substantially Nitrox gas from one outlet and substantially Nitrogen gas from the other ("Nitrox Membranes"), have been known and used since the 1970s, and prior to August, 1994.

14.     Nitrox Membranes were publicly used to generate breathing gases for divers prior to August, 1994.

15.     During the early 1990s, and prior to 1995, researchers Dick Rutkowski, a hyperbaric medicine specialist and Morgan Wells, director of the NOAA Experimental Diving Unit, experimented with the use of such permeable membranes to generate Nitrox.

16.     A membrane-based nitrox generator for diving gases (the "Recent Prior Art") accepting conditioned ambient air at an inlet, exhausting a fixed nitrogen discharge at one outlet, mixing the oxygen-enhanced gas at the other outlet with ambient air, and storing resulting gases as compressed Nitrox for diving, had been sold, installed, publicly used and demonstrated in the early 1990s, prior to 1995.

17.     Additional prior art exists, highly material to the claims of the patent, and known to UBS and its principals (collectively, with the "Recent Prior Art," referred to as the "Prior Art").

## DELP'S WRONGFUL ATTEMPTS TO
## OBTAIN PATENT COVERAGE OF THE PRIOR ART

18.     The Recent Prior Art was, in fact, used by persons affiliated with UBS other than William H. Delp II ("Delp") at the time the first of the applications that matured to one of the Patents in Suit were filed and prosecuted.

19.     The Recent Prior Art was, in fact, designed in pertinent part by persons other than Delp, and by persons known to Delp.

20.     Delp was aware of the Recent Prior Art prior to filing the first of the applications that matured to one of the Patents in Suit.

21.     Delp was not the sole inventor of any of the Prior Art.

22.     Delp was not the sole inventor of any invention claimed in any of the Patents in Suit.

23.     Nevertheless, on or about August 22, 1995, Delp filed an application (the "First Application") for a patent based upon the Prior Art, which substantially differed from prior art only in that it disclosed and claimed the use of a so-called "vortex generator" to selectively heat and cool gasses in a membrane-based nitrox-generating apparatus.

24.     On information and belief, the invention claimed by Delp in the application was assigned to UBS, and UBS participated in the prosecution of the First Application.

25.     Delp intentionally withheld from the United States Patent and Trademark Office material prior art in order to obtain allowance of the First Application, and the '845 patent issued, with broad-sounding claims that were, in fact, limited to devices including a vortex generator and its equivalents.

26.     As set forth below, UBS repeated this practice of seeking the issuance of invalid letters patent for inventions.

27.     On or about September 14, 1995, UBS improperly sought to obtain trademark protection of the generic or descriptive phrase "undersea breathing systems," by obtaining registration of two composite designs incorporating the generic or descriptive phrase.

28.     To obtain allowance of his trademark applications, UBS was forced to expressly disclaim exclusive rights to the phrase "undersea breathing systems, inc.," apart from the composite design as used.

29.     At no time thereafter did UBS seek registration or make other claim to exclusive rights to use the generic or descriptive phrase "undersea breathing systems" apart from the composite design.

30.     For years, UBS was aware that others, and in particular, NuVair, used the generic or descriptive phrase "undersea breathing systems" in connection with nitrox generating equipment.

31.     For years, UBS acquiesced to and did not object to use by others of the generic or descriptive phrase "undersea breathing systems" in connection with the sale of nitrox generating equipment.

32. These advertisements deceived the public to believe UBS owned rights to technology that it did not own.

33. The device demonstrated by UBS with respect to that advertisement did not include a vortex chamber.

### UBS PATTERN OF MISUSE TO FORECLOSE COMPETITION

On or about August 26 and 27, 1995, more than a year before any of the Patents in Suit issued, UBS published a flyer for an open house in which he demonstrated a Nitrox generating device, claiming that UBS "developed and patented" the device, when no patent had been granted on this device.

34. UBS was subsequently fined by a Federal District Court for violating Section 292 of the Patent Act by deceiving and leading the public to conclude that the system demonstrated at the open house was the subject of an issued patent.

35. The system demonstrated by UBS did not include a vortex chamber.

36. Since 1995, UBS has consistently and repeatedly marked UBS products and advertising for such products with the number of the '845 patent, which UBS products did not include a vortex chamber.

37. UBS, at the time of filing this action and thereafter, has marked UBS products or advertising for UBS products with the number of the '845 patent, which UBS products do not include a vortex chamber.

38. On or about March 24, 1997, UBS filed a lawsuit against a competitor, Nitrox Technologies, Inc., or NTI (the "First Lawsuit" under the claims of the '845 Patent).

39.     The device accused in the First Lawsuit did not include a vortex tube or equivalent, and because a District Court judge held that the claims of the '845 patent were limited to such devices, that judge found that the accused device did not infringe any claim of the '845 patent.

40.     Throughout that time, and even though UBS had no right to exclude the defendant from competing with a non-infringing product, UBS sought to improperly and unlawfully impede competition by harassing, through legal process, the First Lawsuit defendant and its customers, and made false and inflammatory claims about the lawsuit and the result of the lawsuit.

41.     UBS made clear that its intention was to use judicial process to impede and shut down competition, even stating beforehand that this was his intention.

42.     UBS informed the First Lawsuit defendant that UBS held the defendant under "electronic surveillance" for some time, and that "patent or no patent, [Delp and UBS] would make [the defendant's] life miserable into the court systems," asserting that notwithstanding the merits, the First Lawsuit defendant could not sustain UBS' legal attacks.

43.     After losing the First Lawsuit in the District Court, UBS unsuccessfully appealed the findings to the Federal Circuit, and continued to claim that the accused device infringed.

44.     Plaintiff was always aware that the First Lawsuit defendant did not infringe its patents, and, in fact, merely asserted the First Lawsuit to impede competition while preparing for a subsequent attack on the same competitor.

45.    On or about March 17, 1997, and prior to filing the First Lawsuit, UBS filed a new application, eventually allowed as the '291 patent, incorporating the identical disclosure of the '845 patent, but adding new claims, and filed another application eventually allowed as the '877 patent, but with new claims and a different disclosure claiming priority based upon the original disclosure.

46.    UBS then proceeded to unjustly delay and exploit the process of patent prosecution before the United States Patent and Trademark Office in an effort to produce a series of submarine patents to financially wear down and force the defendant in the First Action to agree to pay a license.

47.    Although the '291 patent was allowed and scheduled to issue in mid-1996, prior to the resolution of the First Lawsuit, UBS unreasonably delayed it from issue until a time after the First Lawsuit was resolved, and schemed to have the patent issue to prepare a second attack on the First Lawsuit Defendant.

48.    UBS furthered its fraud upon the patent office, withdrawing the patent from issue, putatively to add additional citations of prior art and other references, but without disclosing highly relevant and non-cumulative references known to it, including without limitation, the Recent Prior Art.

49.    After the '291 patent was issued on December of 1998, amid a flurry of public statements, UBS filed a second lawsuit (the "Second Lawsuit") against the defendant of the First Lawsuit.

50.    UBS did not disclose either to the Court or to the First Lawsuit defendant the fact that it had additional pending applications pending, and was repeating its pattern of serial litigation.

51.    On January 12, 1999, UBS permitted the '064 patent to issue and asserted the '064 patent as well against the defendant.

52.    Delp frequently stated to UBS corporate officers his expectation that the doubt he would cast in the marketplace by bringing lawsuits would make it possible for the First Lawsuit defendant to survive.

53.    UBS published in unsolicited facsimile distributions and on its internet web site a series of "Dive Industry Advisor[ies]" purporting to state the status of the UBS campaign against the First Lawsuit defendant, NTI, which falsely related the state of various outstanding lawsuits.

54.    Throughout the prosecution of the applications leading up to the '291 and '064 patents, UBS withheld material details of the Recent Prior Art from the United States Patent and Trademark Office.

55.    The '877 patent issued in February of 1999.  As before, UBS failed to disclose relevant and material prior art to the United States Patent and Trademark Office.

56.    UBS was fully apprised of the relevance of the Recent Prior Art and other relevant art throughout the course of the First and Second Lawsuits, but still did not disclose the most relevant art to the United States Patent and Trademark Office.

57.   UBS continued to assert the Patents in Suit, but at no time thereafter did UBS attempt to clear the record of the Patents in Suit, either by seeking reexamination or reissue in view of the complete record of relevant prior art.

58.   UBS has continued its pattern of misuse with respect the Patents in Suit to the detriment of the public at large.

## NUVAIR, F/K/A UNDERSEA BREATHING SYSTEMS INTERNATIONAL

59.   NuVair is a shareholder of UBS.

60.   NuVair has for years been involved in manufacture and sale of Nitrox gas generators for divers.

61.   NuVair has, in fact, used the name Undersea Breathing Systems in connection with Nitrox gas generators for divers since, at least, April 1999.

62.   UBS has been aware of this usage and has not to this date filed an action claiming infringement or sought to enforce exclusive rights in the words "Undersea Breathing Systems."

63.   UBS has never offered or asked NuVair to enter into a written agreement licensing the phrase Undersea Breathing Systems as a trademark.

64.   On or about August 28, 2000, UBS and NuVair entered into a first agreement (the "Initial Agreement"), granting rights to NuVair to "assemble, test, package, market and sell UBS's patented (#5.611.845, 5.846.291, 5.858.064, 5.865.877) DNAx membrane systems" in a particular territory.

65.   On or about April 7, 2001, UBS and NuVair entered into a second agreement supplanting the First Agreement (the "Agreement"), which granted to NuVair

rights to "assemble, test, package, market and sell UBS's patented (#5.611.845, 5.846.291, 5.858.064, 5.865.877) DNAx membrane systems" in a particular territory (the "Grant of Rights").

66. UBS agreed in the Agreement to give the Grant of Rights for a term ending August 31, 2007, which may be extended automatically, annually, for an additional five (5) years.

67. The Agreement does not provide for revocation or termination of the Grant of Rights.

68. The Agreement required payment of License fees in a fixed amount over the term of the Agreement, and further provided that NuVair would pay the license fees for the third through seventh years by tendering a certain number of shares of UBS stock held by NuVair.

69. NuVair paid its fees and tendered stock as required in the Second Agreement.

70. On or about January 31, 2003, UBS anticipatorily breached the Second Agreement, stating that it would terminate not only the Agreement, but the Grant of Rights prior to August 31, 2007, effective April 8th, 2003.

71. UBS thereafter published statements to customers and prospective customers of NuVair and others, stating the NuVair was not authorized to exercise the Grant of Rights.

72. Such publications interfered with and wrongfully impeded the ability of NuVair to exercise the Grant of Rights.

73.     UBS thereafter filed the pending action, thereby impeding wrongfully the ability of NuVair to exercise the Grant of Rights.

74.     UBS continues to publish press reports and notices to customers and prospective customers of Nuvair, still further impeding the right of NuVair to exercise the Grant of Rights.

## IDENTITY THEFT

75.     NuVair is and has been at all time relevant the owner and registrant of the internet domain name "underseabreathingsystems.com" (the "Domain Name").

76.     Through its ownership of the Domain Name, and the computers NuVair owns and leased to provide Domain Name and other internet services (the "Nuvair Systems"), NuVair provided access to NuVair's web site and mail server to an international community.

77.     Accordingly, consumers who typed the phrase "www.underseabreathingsystems.com" at an internet web browser would be referred to the computer operating as NuVair's web server to display NuVair's web site.

78.     Further, consumers who sent private and federally protected electronic e-mail communications to persons at underseabreathingsystems.com, for example, janet@underseabreathingsystems.com, were assured that the e-mail would be sent to the computer operating as NuVair's mail server to be forwarded to Janet Huebner at NuVair.

79.     On or about September 24, 2003, the Domain Name was hijacked so that consumers who typed the phrase "www.underseabreathingsystems.com" at an internet browser would instead be sent to USB's web site.

80.     The hijacking was accomplished by the making of improper and wrongful
instructions to contractors of NuVair, thereby improperly and without authorization
accessing areas of NuVair Systems so that the Internet Domain Name System would
direct internet queries to the address "www.underseabreathingsystems.com" to web
servers controlled by UBS, and e-mails to the addresses

"_____@underseabreathingsystems.com" to mail servers controlled by UBS.

81.     In particular, on information and belief, USB intentionally and without
authorization instructed the domain name registrar to modify domain name records in
order to secure to USB the right to control the hijacked domain name, securing to itself
the right to control and direct use of the domain name underseabreathingsystems.com.

82.     UBS thereafter caused consumers making web site queries to receive
pages from the UBS web site.

83.     On information and belief, UBS thereafter intercepted and accessed e-mail
from consumers and other persons believing they were sending e-mail to NuVair.

84.     On information and belief, USB thereby willfully obtained access to
confidential communications and trade secret information of NuVair.

85.     On information and belief, USB thereby willfully used or disclosed such
confidential, commercial and sales information for its own benefits.

86.     Such use and disclosure of information included furthering the wrongful
UBS scheme to misinform the public concerning UBS claims to patent and trademark
rights.

87.    UBS exploited its access to this information to extend its scheme to elicit

fear, uncertainty, and doubt in the dive community at large, by sending correspondence to

customers and prospects of NuVair misrepresenting the scope and nature of UBS rights

in and to the Patents in Suit, as well as misrepresenting the scope and nature of consent

decrees in prior cases with respect thereto.  These false statement were designed to

willfully and unlawfully chill the market for noninfringing competitive goods.

## COUNT ONE FOR DECLARATORY JUDGMENT OF INVALIDITY, NON-INFRINGEMENT AND UNENFORCEABILITY OF PATENTS

88.    NuVair incorporates by reference the allegations set forth in Paragraphs 85

through 102 of the Affirmative Defenses and Paragraphs 5 through 88 of the

Counterclaim as if fully set forth herein.

89.    There is a substantial and actual controversy of a justiciable nature

between UBS and NuVair and the parties have adverse legal interests.

90.    Upon information and belief other parties known to UBS have used, since

at least as early as 1993, apparatus for generating oxygen enriched air incorporating the

structure recited in the asserted apparatus claims of the UBS Patents in Suit.

91.    Upon information  and belief parties known to UBS have, since at least as

early as 1993, used apparatus for generating oxygen enriched air in the manner recited in

the method claims of the UBS Patents in Suit.

92.    Upon information  and belief the patentee and assignor to UBS of the '291

patent was aware from prior to the date of filing of the application leading to said '291

patent that said assignor did not himself invent the subject matter sought to be patented.

93.     UBS has repeatedly instituted infringement suits, including the present suit, in bad faith, with information available to UBS establishing that the NuVair in said litigation do not infringe, thereby constituting patent misuse.

94.     NuVair has not made, used, sold or offered for sale any apparatus embodying a claim of any of the patents in suit.

95.     For the reasons set forth above the Patents in Suit are invalid, unenforceable, or both.

96.     As a result of UBS's wrongful institution of this lawsuit with its wrongful assertion of claims of willful and intentional infringement, NuVair NTI has ceased shipping any further units of its accused apparatus and has suspended promotion of the accused damages, thus causing damage to NuVair/Counterclaimant NuVair and to NuVair/Counterclaimant NuVair's business.

## COUNT TWO FOR DECLARATORY OF UNENFORCEABILITY OF UNDERSEA BREATHING SYSTEMS AS A TRADEMARK

97.     Nuvair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

98.     UBS recently asserted that the long-standing use by NuVair of the generic or descriptive term "undersea breathing systems" violates rights of UBS and provides grounds for UBS to terminate the Agreement.

99.     UBS does not own and has not appropriated to itself any exclusive rights in or to the generic or descriptive term "undersea breathing systems."

100.    In the alternative, if UBS had appropriated any exclusive rights in or to the generic or descriptive term "undersea breathing systems," UBS would by its conduct

would have either abandoned or acquiesced to the use of those rights by NuVair, or is barred by reasons of Laches to enforce it.

101. There is a substantial and actual controversy of a justiciable nature between UBS and NuVair and the parties have adverse legal interests.

102. NuVair is entitled to a judgment declaring that it has not infringed any exclusive right of UBS in or to the generic or descriptive term "undersea breathing systems."

103. NuVair is entitled to a judgment declaring that it has not breached any provision of any agreement with UBS as a result of its use of the generic or descriptive term "undersea breathing systems."

## COUNT THREE FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

104. Nuvair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

105. On information and belief, UBS, knowingly and with intent to defraud, accessed a protected computer without authorization or in excess of their authorized access, and by means of such conduct furthered their intended fraud and obtained valuable information.

106. The UBS acts complained of herein violate the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et. Seq., which provides for a civil remedy for violations of this criminal statute at 18 U.S.C. § 1030(g).

107. The UBS violations of the Computer Fraud and Abuse Act have caused NuVair irreparable injury, loss of reputation and pecuniary damages in an amount not yet

determined and UBS will profit thereby. Unless enjoined by this Court, UBS is likely to repeat the hijacking, identity theft and wrongful use of the information obtained thereby.

## COUNT FOUR FOR VIOLATION OF THE
## ELECTRONIC COMMUNICATION PRIVACY ACT

108. Nuvair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

109. UBS intentionally accessed and used without authorization the NuVair website through which an electronic communication service is provided.

110. The electronic communication service included the transmission, storage, exchange and distribution of web site data and e-mail.

111. The UBS acts complained of herein violate the Electronic Communication Privacy Act, 18 U.S.C. §§ 2701, et seq., which provides for a civil remedy for violation of the criminal statute at 18 U.S.C. § 2707.

112. The UBS violations of the Electronic Communication Privacy Act have caused NuVair irreparable injury, loss of reputation and pecuniary damages in an amount not yet determined and UBS will profit thereby. Unless enjoined by this Court, UBS is likely to repeat the hijacking, identity theft and wrongful use of the information obtained thereby.

30

## COUNT FIVE FOR VIOLATION OF THE
## FLORIDA COMPUTER CRIMES ACT

113.    Nuvair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

114.    On information and belief, UBS, without authorization, knowingly accessed, from Florida, computers and destroyed and counterfeited domain name data, thereby obtaining confidential and trade secret information in violation of the Florida Computer Crimes Act, § 815.01 et seq, Fla. Stat, and is therefore liable for damages under § 772.101 et seq.

115.    The UBS violations of the Electronic Communication Privacy Act have caused NuVair irreparable injury, loss of reputation and pecuniary damages in an amount not yet determined and UBS will profit thereby.  Unless enjoined by this Court, UBS is likely to repeat the hijacking, identity theft and wrongful use of the information obtained thereby.

## COUNT SIX FOR
## DECEPTIVE AND UNFAIR TRADE PRACTICES

116.    NuVair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

117.    The UBS business practices, as recited above, are unlawful, unfair and deceptive acts and practices in violation of Section 501.201 et seq., Fla. Stat., and NuVair, as well as customers and prospects of NuVair, were harmed thereby.

118.    The UBS unfair and deceptive trade practices has caused NuVair irreparable injury, loss of reputation and pecuniary damages.  Unless enjoined by this

Court, UBS will continue these violations to the immediate and irreparable harm of NuVair.

## COUNT SEVEN FOR
## BREACH OF CONTRACT AND INDEMNITY

119.   NuVair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

120.   UBS also breached the Agreement by failing to provide materials at the prices set forth therein.

121.   NuVair suffered damages as a direct and proximate result of such breaches of the Agreement and is forced to defend a lawsuit with respect to which UBS had promised and covenanted not to bring.

122.   The UBS breach of the Agreement has compelled NuVair to retain the undersigned counsel and to pay said counsel a reasonable attorney fee.

123.   UBS is obliged, therefore, to compensate and indemnify NuVair against damages suffered thereby, as well as for costs and fees incurred in defending this action.

124.   All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

## COUNT EIGHT FOR
## MISAPPROPRIATION OF TRADE SECRETS

125.   NuVair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

126.   The UBS business practices, as recited above, improperly misappropriated, without consent of Nuvair, trade secret and confidential information of

32

NuVair by obtaining the information by wrongful means and by using or disclosing the information to third parties, in violation of Chapter 688, Florida Statutes.

127.    The UBS unfair and deceptive trade practices has caused NuVair irreparable injury, loss of reputation and pecuniary damages. Unless enjoined by this Court, UBS will continue these violations to the immediate and irreparable harm of NuVair.

### COUNT NINE FOR CONVERSION

128.    NuVair repeats and realleges each and every allegation contained in Paragraphs 5 through 88 of the Counterclaim.

129.    UBS has intentionally and wrongfully converted NuVair property to the use and benefit of UBS, contrary to NuVair's ownership interest.

130.    As a direct and proximate result of the UBS conversion, NuVair suffered damages thereby.

131.    Due to the intentional, willful, and wanton conduct of UBS, it is liable to NuVair for exemplary or punitive damages.

132.    The UBS conduct has caused NuVair irreparable injury, loss of reputation and pecuniary damages. Unless enjoined by this Court, UBS will continue these violations to the immediate and irreparable harm of NuVair.

WHEREFORE, NuVair respectfully demands and prays that:

A)    This Court dismiss the Complaint with prejudice and that UBS take nothing thereby;

B)      This Court enter an order declaring that the accused apparatus of NuVair does not infringe any of the claims of the Patents in Suit;

C)      This Court enter an order declaring that the Patents in Suit are unenforceable for inequitable conduct by UBS and its employees and agents before the United States Patent and Trademark Office, for patent misuse, for mismarking and for knowingly asserting without probably cause patent causes and asserting invalid patent claims;

E)      This Court enter an order declaring that the Patents in Suit are invalid under either 35 U.S.C. § 102, or 35 U.S.C. § 103, and/or 35 U.S.C. § 112;

F)      This Court enjoin UBS from asserting the Patents in Suit, or any divisional or continuation patent related to the '291 patent, against NuVair, its customers or any parties acting in concert therewith;

G)      This Court enjoin UBS from continuing, repeating or making further use of information gained from the domain name hijacking and information theft;

H)      This Court require UBS to publicly retract the false and malicious statements complained of;

I)      This Court award NuVair actual, exemplary, treble and punitive damages, including interest, suffered as a result of the torts UBS has committed;

J)      This Court find that this case is exceptional within the meaning of 35 U.S.C. § 285 and award NuVair its reasonable attorney fees;

K)      This Court award NuVair its costs in this action; and

L)      This Court award NuVair such other and further relief as the Court may

deem just and proper under the circumstances.

for C Douglas McDonald

C. Douglas McDonald, Jr.
Florida Bar Number 296538
Andrew C. Greenberg
Florida Bar Number 996726
CARLTON FIELDS, P.A.
One Harbour Place
Post Office Box 3239
Tampa, Florida 33601
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

Trial Counsel for NuVair Nu Venture
Diving Company.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnished, via facsimile and U.S. Mail, First Class, postage prepaid, to Herbert L. Allen,

Esquire, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., 255 South Orange Avenue,

Suite 1401, Orlando, Florida, 32802, this _____ day of March, 2004.

Attorney